UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

JEFFREY WASHINGTON,               )
    *Petitioner*,                     )
                                                              )
    *vs.*                             )          2:12-cv-56-JMS-DKL
                                                              )
SUPERINTENDENT, WABASH VALLEY COR-  )
RECTIONAL FACILITY,                 )
    *Respondent*.                     )

## ENTRY DISCUSSING PETITION FOR WRIT OF
## HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Presently pending before the Court is Petitioner Jeffrey Washington's Petition for a Writ of Habeas Corpus. [Dkt. 1.] Washington raises three issues, but the Court concludes that he has procedurally defaulted on two of them by not presenting them to the state court on post-conviction review. The Court rejects Washington's claim for ineffective assistance of trial counsel on the merits. For these reasons, explained in further detail herein, Washington's petition for a writ of habeas corpus must be denied and the action dismissed with prejudice. In addition, the Court finds that a certificate of appealability should not issue.

## I.
### BACKGROUND

The following underlying facts were set forth by the Indiana Supreme Court on Washington's direct appeal and are presumed to be correct because they have not been rebutted by clear and convincing evidence, 28 U.S.C. § 2254(e)(1):

> The recent end of a romantic relationship with the victim Sandra Bass apparently upset Washington. At some point in the late evening hours of December 5, 2001, he walked to the apartment complex where Bass lived with her three children and saw Bass and another man leaving the apartment complex in Bass' car. Bass returned a short time later, parked her car in her assigned spot and was getting out of her car when Washington confronted her. Armed with a butcher knife and wearing a pair of socks over his hands, Washington shoved Bass back

into the car and stabbed her at least thirteen times. Washington fled the complex and hid the knife and his clothes in separate locations. Bass bled to death from the stab wounds. The following day, Washington was apprehended and questioned at length by the police. After an initial attempt to provide the police with an alibi for the previous night, Washington admitted stabbing Bass.

   The State charged Washington with murder. Alleging that he committed the murder while lying in wait, Ind. Code § 35–50–2–9(b)(3), and while on probation, I.C. § 35–50–2–9(b)(9)(C), the State also sought life imprisonment without parole. After a trial by jury Washington was convicted as charged. At the penalty phase of trial, the jury recommended that a sentence of life imprisonment without parole be imposed. The trial court thereafter sentenced Washington consistent with the jury's recommendation.

*Washington v. State*, 808 N.E.2d 617, 620-21 (Ind. 2004); *see also Washington v. State*, 953 N.E.2d 1280 (Ind. Ct. App. 2011) (post-conviction appellate court adopting background set forth by Indiana Supreme Court) (unpublished).

   On May 11, 2005, Washington filed a *pro se* petition for post-conviction relief that was amended by appointed counsel on August 5, 2010. [Dkt. 10-2 at 2.] Washington raised four types of issues on post-conviction review:

- Ineffective assistance of counsel based on counsel's failure to 1) appropriately investigate and determine Washington's mental health status; 2) effectively remediate an inappropriate comment by the prosecutor; and 3) effectively prepare and present the defense of voluntary manslaughter;

- Washington's competence to stand trial, based on his emotional reaction to certain photographs during trial;

- Alleged prosecutorial misconduct during trial based on comments made by the prosecutor while arguing the admissibility of certain photographs; and

- The constitutionality of Washington's sentence for life without parole ("LWOP").

[Dkt. 10-9 at 19-20.] The post-conviction court held an evidentiary hearing on October 14, 2010, and denied Washington's petition on December 31, 2010. [*Id.* at 10-31.]

Washington appealed the denial of his petition for post-conviction relief to the Indiana Court of Appeals.  He only raised issues surrounding the alleged ineffectiveness of his trial counsel, particularly at the penalty phase of his LWOP trial, where he contended that

> [t]rial counsel believed that a determination of guilt was certain, yet still neglected to conduct any investigation into the possible punishments for Washington. Where ample and significant evidence of mitigation exists and was readily available, Washington was prejudiced by counsel's failure.

[Dkt. 10-9 at 7-8.]  In relevant part, Washington argued that his trial counsel "entirely neglected to conduct any mitigation investigation" and that "[a]dequate investigation would have alerted counsel to Washington's multiple, severe, mental illnesses."  [*Id.* at 11-12.]

In addressing Washington's appeal, the Indiana Court of Appeals set forth additional facts relevant to his ineffective assistance of trial counsel claim, which are presumed to be correct because they have not been rebutted by clear and convincing evidence, 28 U.S.C. § 2254(e)(1):

> At the outset of the case, defense counsel sought psychiatric evaluations of Washington for a potential insanity defense.  Drs. Thomas F. Liffick and David K. Hilton each examined Washington and submitted written reports to the trial court. Dr. Liffick's report noted in part:
>
> > Mental Health Center records indicate that Mr. Washington was first seen in April, 1979 for a court ordered evaluation because he was caught stealing.  He was said at the time to have an I.Q. of 70 and was diagnosed with "Minimal Brain Dysfunction" and as having a "Conduct Disorder".  He was seen again in March, 1982 because of "repeated delinquent acts".  At that time, he had failed a placement at Hillcrest-Washington Youth Home and was referred to a residential treatment setting.  He was seen again in October, 1994, when in fact I had discharged him from the hospital after a one night stay.  At that time, he had overdosed on an antibiotic and had, at that time, just been discharged from an 8 year prison sentence for burglary and battery.  He was diagnosed at that time as having an Adjustment Disorder.  He was also seen in February, 1997 subsequent to an arrest for stalking.  He was also given tests at that time which indicated an I.Q. in the 81–87 range with a 4th grade reading level.  Personality Inventory also indicated that he

exaggerated symptoms for effect. He was given a diagnosis at that time of Antisocial Personality Disorder.

Mr. Washington has a 9th grade education and was expelled from school in the 10th grade for fighting. He has had arrests previously for burglary and robbery in 1986, for voyeurism in 1995 and for stalking in 1996....

The mental status is that of a well-developed, well nourished, handsome young man who appears about his stated age....

Thought processes are logical sequential, relevant and spontaneous. There are no indications of any autistic thinking. Thought content reveals no psychotic symptoms at any time. There are no indications of any preoccupations or other aberrations of thought content....

My impression clinically is that of an ANTISOCIAL PERSONALITY DISORDER. I see no evidence of any significant psychiatric illness or otherwise. Mr. Washington has demonstrated periods in the past that could be diagnosed as periods of Adjustment Disorder in response to situational stresses. It is, in fact, possible that he was experiencing just such an adjustment disorder as a result of the loss of this relationship at the time of the events that have led to his arrest. . . .

Dr. Hilton's report noted:

Mr. Washington has a history of antisocial behavior dating back to his youth. By his report in 1982 he broke into a house, resulting in his placement at Hillcrest-Washington Youth Home. Also as a teenager, he was sent to Gebault [sic] School for Boys, reportedly for coercing another male child to perform oral sex on him. While at Gebault [sic], he allegedly "patted" a female employee on the shoulder, resulting in an assault charge and his first stay at Indiana Boys' School. He also reportedly was sent to Boys' School on a second occasion for stealing a car stereo.

At 17 years of age, he was waived from juvenile to adult court on a charge of burglary and robbery. He was arrested in September, 1986 on these charges and, when convicted, served 7 years in prison, one year in jail, and 3 months on house arrest.

In 1996, he was convicted of stalking an ex-girlfriend as well as resisting arrest and escape. He spent 3 months in jail followed by approximately 4 years in prison.

- 4 -

Mr. Washington was first seen at the Southwestern Indiana Mental Health Center in April, 1979 when he was 10 years and 4 months of age. He underwent a psychological evaluation by Preston Phillips at the request of the Posey County Circuit Court in relation to an incident in which he had admitted to some theft.

Those records show that there was prior history of the use of Ritalin for hyperactivity symptoms, but he had been off of the medication for some time prior to the testing. It was also pointed out that there was history of inadequate parental supervision and nurturance in the home. During the testing, no attentional problems or problems with hyperactivity were observed. The WISC–R showed a full-scale IQ of 70, which was felt to demonstrate borderline intellectual functioning. His academic achievement, however, was good in relation to his intellectual ability, but was still well below what would have been expected for his grade placement. The Bender Gestalt Test was consistent with minimal brain dysfunction (ADHD).

He was seen in therapy by Mr. Bill Curtis and was felt to be socioculturally disadvantaged, neglected, and unsupervised. His treatment diagnosis was Unsocialized Disturbance of Conduct, the old terminology for what now would be considered a Conduct Disorder.

Mental Status Examination
The defendant was noted to be a well developed, well nourished, 33 year old, black male in no acute distress....

On Folstein's Mini-Mental State exam, the defendant scored a perfect score of 30 out of 30.... There was no evidence of fragmentation or disorganization of his form of thought. He voiced no obvious delusions. He denied ever having any history of auditory or visual hallucinations at any time in his life. He also denied ever having experienced ideas of reference, thought insertion, or thought broadcasting.

Impression
Axis I: No definitive diagnosis, although ADJUSTMENT DISORDER WITH DEPRESSED MOOD is possible.

Axis II: ANTISOCIAL PERSONALITY DISORDER

There also was some indication in his history that, contrary to his own statement, there may have been a tendency in the past toward

- 5 -

> violent behavior toward women. This is suggested by the prior ar-
> rest for stalking an ex-girlfriend and may have been related to his
> transform from Gebault [sic] School for Boys to the Indiana Boys'
> School during his youth. . . .

Both Drs. Liffick and Hilton concluded that Washington suffered no significant mental disease or defect that prevented him from appreciating the wrongfulness of the acts charged.

Defense counsel was also aware before trial of Washington's extensive criminal history. Washington's criminal record included juvenile delinquency adjudications for theft, trespass, burglary, and sexual abuse and adult convictions for robbery, voyeurism, escape, and stalking. One of defense counsel's main objectives at trial was to limit discussion of Washington's prior convictions as much as possible.

Washington was tried by a jury in 2002 and found guilty as charged.

Defense counsel called two witnesses in the penalty phase of trial: Washington's cousin and grandmother. They testified that before the murder, Washington had been attempting to address his anger through counseling. Defense counsel reviewed the psychiatric evaluations performed by Drs. Liffick and Hilton but elected not to introduce them. Nor did he offer independent evidence of Washington's troubled childhood.

The jury found beyond a reasonable doubt that Washington committed the murder while lying in wait and while on probation in another case. The jury also found that those two aggravating circumstances outweighed any purported mitigators. The jury recommended a sentence of life without the possibility of parole, and the trial court sentenced Washington consistent with the jury's recommendation.

Our Supreme Court affirmed Washington's conviction and sentence on direct appeal. *See Washington*, 808 N.E.2d at 620.

Washington next sought post-conviction relief alleging ineffective assistance of counsel. Washington averred, among other things, that trial counsel rendered ineffective assistance by inadequately investigating and offering during the penalty phase evidence of his psychiatric history and abusive childhood.

The post-conviction court convened a hearing in 2010. Washington called several witnesses, including his maternal aunts, pastor, and psychologist Thomas Holsworth. Washington's aunts and pastor recounted Washington's troubled youth. They also testified that Washington assumed the role of housekeeper and babysitter and that he would assist the pastor at his farm and church. Dr. Holsworth submitted a psychological evaluation of Washington. Dr. Holsworth diagnosed Washington with several psychological, social, and intellectual impairments, but

his observations were largely consistent with those of Drs. Liffick and Hilton.  Dr. Holsworth noted that Washington is a "hostile individual," "tends to hold grudges," "is  quick to feel that he is being treated inequitably," "resents rules," "can act out without guilt," "does not easily learn from experience," displays a "degree of explosiveness and propensity for violence," and is unable "to participate meaningfully in some forms of treatment."

The post-conviction court issued findings of fact and conclusions of law denying relief.  The court concluded in relevant part that counsel "was aware of Mr. Washington's troubled childhood, prior criminal history and Dr. Liffick's and Dr. Hilton's evaluations.  [Counsel] chose to limit, to the extent he could, the jury's knowledge of Mr. Washington's prior criminal history.  Assuming *arguendo*, [counsel] slipped below professional norms in not obtaining and presenting a more detailed mental evaluation, there is no reasonable probability the jury would have found differently."

*Washington*, 953 N.E.2d 1280 at *3-*9.

On September 19, 2011, the Indiana Court of Appeals affirmed the decision of the post-conviction court.  *Id.* at *14-*17.  The Court of Appeals concluded that Washington had not proven that counsel's performance was deficient and, even assuming that it was, he was not able to show prejudice for counsel's alleged omissions.  *Id.*  Washington filed a petition to transfer with the Indiana Supreme Court, but it denied his petition on December 19, 2011.  [Dkt. 10-4 at 5.]

Washington filed a Petition for Writ of Habeas Corpus on March 7, 2012, [dkt. 1], which is now fully briefed.

## II.
### STANDARD OF REVIEW

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws ... of the United States."  28 U.S.C. § 2254(a).  "Under the current regime governing federal habeas corpus for state prison inmates, the inmate must show, so far as bears on this case, that the state court which convicted him unreasonably applied a federal doctrine declared by the United States Supreme Court."  *Redmond v. Kingston*,

240 F.3d 590 (7th Cir. 2001) (citing 28 U.S.C. § 2254(d)(1)); *Williams v. Taylor*, 529 U.S. 362 (2000); *Morgan v. Krenke*, 232 F.3d 562 (7th Cir. 2000). "The habeas applicant has the burden of proof to show that the application of federal law was unreasonable." *Harding v. Sternes*, 380 F.3d 1034, 1043 (7th Cir. 2004) (citing *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002)).

In addition to the substantive standard noted above, "[o]ut of respect for finality, comity, and the orderly administration of justice, a federal court will not entertain a procedurally default-ed constitutional claim in a petition for habeas corpus absent a showing of cause and prejudice to excuse the default." *Dretke v. Haley*, 541 U.S. 386, 388 (2004). Before a federal court can en-tertain a petition for habeas corpus, a state prisoner must exhaust his state remedies by presenting his claims fully and fairly to the state courts. *Howard v. O'Sullivan*, 185 F.3d 721, 725 (7th Cir. 1999) (citing 28 U.S.C. 2254(b)(1)(A), (c); *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Pa-trasso v. Nelson*, 121 F.3d 297, 301 (7th Cir. 1997)). "A state prisoner ... may obtain federal ha-beas review of his claim only if he has exhausted his state remedies and avoided procedurally defaulting his claim." *Thomas v. McCaughtry*, 201 F.3d 995, 999 (7th Cir. 2000). Procedural default "occurs when a claim could have been but was not presented to the state court and can-not, at the time that the federal court reviews the habeas petition, be presented to the state court." *Resnover v. Pearson*, 965 F.2d 1453, 1458 (7th Cir. 1992), *cert. denied*. When procedural de-fault has occurred, it can be overcome if a habeas petitioner "can demonstrate either (a) cause for the default and prejudice (*i.e.*, the errors worked to the petitioner's 'actual and substantial disad-vantage,'); or (b) that failure to consider his claim would result in a fundamental miscarriage of justice (*i.e.*, a claim of actual innocence)." *Conner v. McBride*, 375 F.3d at 649 (internal cita-tions omitted). "Cause" for a procedural default exists if the petitioner can demonstrate that "some objective factor external to the defense impeded counsel's efforts to comply with the

State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  Prejudice is demonstrated by showing that the errors worked to the petitioner's "actual and substantial disadvantage." *United States v. Frady*, 456 U.S. 152, 170 (1982).

## III.
### DISCUSSION

### A.  Ineffective Assistance of Counsel

Washington contends that his Sixth Amendment right to counsel was violated by ineffective assistance of his trial counsel.  Specifically, he claims that his trial counsel was ineffective because he allegedly did not prepare for the penalty phase by seeking mitigating evidence, such as mental health testimony or testimony regarding Washington's troubled childhood.  [Dkts. 1 at 4; 17 at 3.]

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, governs the Court's assessment of Washington's claims.  When a state court decides a constitutional claim such as the right to counsel on the merits, AEDPA provides that a writ of habeas corpus shall not be granted unless the state-court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence" before the state court.  28 U.S.C. § 2254(d)(1)-(2).  The Court typically considers the last reasoned opinion of a state collateral review system, which here is the Indiana Court of Appeals.  *Woolley v. Rednour*, 702 F.3d 411, 421 (7th Cir. 2012).  In applying AEDPA's "difficult to meet ... and highly deferential standard," the Court will give the Indiana Court of Appeals' decision "the benefit of the doubt." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1391 (2011).

To demonstrate that the right to counsel was violated by ineffective assistance, Washington must meet the familiar two-part standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  He must show (1) that his counsel's performance was deficient, meaning that it fell below an "objective standard of reasonableness" informed by "prevailing professional norms," and (2) that his counsel's deficient performance prejudiced him, meaning that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 687-88.  In evaluating an attorney's performance, "courts must defer to any strategic decision the lawyer made that falls within the 'wide range of reasonable professional assistance,' even if that strategy was ultimately unsuccessful."  *Shaw v. Wilson,* --- F.3d ---, 2013 WL 3814671, at *5 (7th Cir. 2013) (quoting *Strickland*, 466 U.S. at 689).

On habeas review, however, a federal court's task is not a *de novo* review of an ineffective assistance of counsel claim under *Strickland*.  *McElvaney v. Pollard*, --- F.3d ---, 2013 WL 4423669, at *4 (7th Cir. 2013).  Instead, given the confines of AEDPA, the inquiry is limited to whether the Indiana Court of Appeals' determination that Washington was not denied effective assistance of counsel "was contrary to, or involved an unreasonable application of" *Strickland*. *Id.*  "This means that 'the question is not whether [Washington's] counsel's actions were reasonable.  The question is whether there is any reasonable argument that [Washington's] counsel satisfied *Strickland*'s deferential standard.'"  *Id.* (quoting *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011)).

In affirming the decision of the trial court denying Washington's petition for post-conviction relief, the Indiana Court of Appeals agreed with the post-conviction court that Washington failed to sustain a showing of ineffective assistance:

> First, we cannot say that trial counsel's performance was deficient.  Counsel sought psychiatric evaluations of Washington at the beginning of the case and re-

viewed the reports for purposes of sentencing.  Counsel chose not to introduce Washington's psychiatric evaluations during the penalty phase, and that decision was more than justifiable.  Washington's evaluations revealed a history of antisocial behavior and aggression toward women, yet no significant and present mental disability.  As a result, introduction of the psychiatric evidence likely would have been unavailing and even disadvantageous.  Counsel also acted reasonably in not offering childhood-related testimony from Washington's aunts or pastor, who in part characterized Washington as a housekeeper, babysitter, and assistant at the farm and church.  Counsel's concern throughout trial was that the jury would be exposed to Washington's formidable criminal history.  While evidence of Washington's troubled youth likely would not have opened the door to prior convictions, any testimony portraying him as a "helper" or "protector" could have.  *See, e.g.*, *Allen v. State*, 749 N.E.2d 1158, 1173 (Ind. 2001) ("While the evidence of Allen's family history describes the difficult conditions of his childhood, it also contains numerous positive references to Allen's role as a protector of the younger children in his neighborhood and family, his role as 'man of the house,' his tendency to take blame for others, and his practice of stealing to feed his family.  This testimony—which was intertwined with the negative aspects of Allen's youth—is a form of character evidence that could open the door to Allen's criminal history.  Trial counsel's performance was not deficient for not presenting this evidence."), *reh'g denied*.  Counsel was therefore warranted in foregoing the character evidence altogether.  *See id.*; *see also* 1 F. Lee Bailey & Kenneth J. Fishman, Criminal Trial Techniques § 32:24 (2009) ("During the cross-examination, the prosecutor may ask a character witness if he or she has ever heard particular rumors or reports derogatory to the defendant's reputation. . . .  If your character witnesses are open to any such attack, do not put them on the stand.").

Finally, even if we assumed *arguendo* that counsel was deficient for failing to introduce the mitigation evidence desired, we would still find an insufficient showing of resultant prejudice.  The jury found beyond a reasonable doubt that Washington committed the murder while lying in wait and while on probation for another offense.  The omitted character testimony from Washington's aunts and pastor was neither substantial nor overwhelmingly favorable.  And while Dr. Holsworth's evaluation included more diagnoses than Dr. Liffick's or Dr. Hilton's, it disclosed the same litany of antisocial and unsympathetic behaviors.  It is thus unclear that Washington would have benefitted from the evaluation's introduction had it been procured for trial.  Accordingly, we find no reasonable probability that, but for counsel's alleged omissions, the jury would have weighed the aggravators and mitigators differently and the outcome of Washington's proceeding would have been different.

*Washington*, 953 N.E.2d 1280 at *14-*17.

Washington's appeal fails under the "doubly" deferential standard of review this Court must apply when reviewing a post-conviction decision applying the standards for ineffective assistance of counsel. *Harrington*, 131 S.Ct. at 788 ("Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.") (citations and quotations omitted). Unless Washington persuades the Court that the decision from the Indiana Court of Appeals is "contrary to, or involved an unreasonable application of *Strickland*," he cannot obtain habeas relief. *See McElvaney*, 2013 WL 4423669 at *4.

The Court concludes that there is no reasonable argument that the Indiana Court of Appeals' decision denying post-conviction relief was contrary to or involved an unreasonable application of *Strickland*. It is undisputed that Washington's trial counsel was aware of Washington's troubled childhood and prior criminal history. [Dkt. 10-9 at 30.] He sought psychiatric evaluations of Washington before trial and reviewed those again before the penalty phase. [Dkt. 10-11 at 10-11.] Those evaluations revealed Washington's history of antisocial behavior and aggression toward women but did not support a significant and present mental disability. [*Id.* at 11.] Thus, it was not unreasonable for the Indiana Court of Appeals to conclude that Washington's counsel was not deficient for not introducing the reports because they "likely would have been unavailing and even disadvantageous." [*Id.*] And as Respondent points out, had Washington's counsel put forth such evidence or called a psychologist such as Dr. Holsworth, who testified at the post-conviction hearing, the State could have presented the tactically excluded evaluations, including one doctor's observation that Washington's history included a "tendency in the past toward violent behavior toward women." [Dkt. 10-11 at 6.] Considering that Washington was

- 12 -

accused of murdering his ex-girlfriend by lying in wait before stabbing her at least thirteen times, such evidence could have been devastating.  *See Miller v. Anderson*, 255 F.3d 455, 458 (7th Cir. 2001) ("The clearest respect in which the lawyer's representation fell below the minimum level was the decision to put the psychologist on the stand . . . .  The lawyer did this knowing that Miller had been previously convicted of kidnapping, rape, and sodomy and at the time of the crime for which he was being tried had been free on parole from a life sentence for kidnapping.  The state brought these facts out on cross-examination of the psychologist and they not only destroyed the psychologist's credibility but almost certainly and perhaps decisively bolstered the jury's confidence in Miller's guilt.").

Likewise, the Indiana Court of Appeals' conclusion that Washington's counsel was not deficient for not presenting evidence of his troubled childhood is not unreasonable.  [Dkt. 10-11 at 11.]  It is undisputed that counsel's concern throughout trial was that the jury would be exposed to Washington's formidable criminal history.  [*Id.*]  Included among Washington's numerous prior convictions were convictions for crimes against women, such as stalking and sexual abuse.  [*Id.* at 6.]  It was not unreasonable for the Indiana Court of Appeals to conclude that evidence of Washington's troubled youth was likely to open the door to his prior convictions because his aunt and pastor had also characterized him positively.  [*Id.* (citing *Allen*, 749 N.E.2d at 1173) (holding on post-conviction appeal that trial counsel was not deficient under *Strickland* for not introducing evidence of family history because it was intertwined with positive references that could open the door to criminal history).]  Instead, Washington's counsel presented evidence from Washington's cousin and grandmother but limited them to Washington's demeanor the day of the crime and his attempts to address his anger through counseling.  [Dkts. 10-9 at 21 ¶ 3; 10-11 at 6; 17 at 5.]  Given counsel's goal of avoiding opening the door to evidence of Washing-

ton's previous convictions, which he achieved, [dkt. 10-9 at 29], the Court concludes that it was not unreasonable for the Indiana Court of Appeals to conclude that counsel was not deficient for failing to introduce evidence of Washington's troubled childhood.

While Washington's counsel presented limited mitigating evidence, he did present some evidence. Counsel was aware of Washington's troubled childhood and prior criminal convictions, [dkt. 10-9 at 30], but tactically chose to present evidence that would not open the door to his mental evaluations or extensive criminal history, which exhibited a history of violence towards women. Thus, Washington's claim boils down to a contention that his counsel did not present *enough* mitigating evidence. "[S]uch arguments come down to a matter of degrees, which are ill-suited to judicial second-guessing." *Woods v. McBride*, 430 F.3d 813, 826 (7th Cir. 2005) (citing *Conner v. McBride*, 375 F.3d 643, 666 (7th Cir. 2004)). For these reasons, the Court concludes that the Indiana Court of Appeals was not unreasonable for concluding that Washington failed to establish that his counsel was deficient under *Strickland*.

In the interest of completeness, the Court also finds that even assuming for the sake of the argument that Washington's counsel's performance was deficient, the Indiana Court of Appeals was not unreasonable for concluding that Washington cannot satisfy the prejudice prong of *Strickland*. Nothing Washington offers convinces the Court that there is a reasonable probability that the additional details would have tipped the scales in his favor at sentencing, thus it was not unreasonable for the Indiana Court of Appeals to conclude that Washington was not prejudiced by counsel's failure to offer the cited evidence. Indeed, this possibility is even less likely in light of the nature of the crime for which Washington stood trial and the aggravating circumstances presented to the jury. *Woods*, 430 F.3d at 826. For these reasons, Washington's ineffective assistance of trial counsel claim fails.

### B.  Procedural Default on Remaining Claims

Washington raises two additional issues in his petition for habeas relief.  First, he argues that the trial court erred by denying a motion to suppress a confession he made to the police.  [Dkts. 1 at 4-5; 17 at 9-10.]  Second, he argues that the trial court erred in refusing a jury instruction about voluntary manslaughter.  [Dkts. 1 at 5; 17 at 10-11.]  Washington did not raise either of these issues to any of the Indiana state court tribunals in which he sought post-conviction relief.  [Dkts. 10-9 at 19-20 (trial court opinion stating issues in amended post-conviction petition); 10-9 at 7-8, 11-12 (issues raised in appellant's brief to Indiana Court of Appeals on post-conviction review); 10-12 at 5 (issues raised in petition to transfer to Indiana Supreme Court on post-conviction review).]

Before a federal court may evaluate the merits of a habeas corpus petition, the petitioner must have exhausted his remedies before the state court.  *See Harrington*, 131 S.Ct. at 787 (citing 28 U.S.C. § 2254(b)).  This means that the petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan*, 526 U.S. at 845.  "A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim."  *Malone v. Walls*, 538 F.3d 744, 753 (7th Cir. 2008) (citation omitted).

A district court is permitted to raise procedural default *sua sponte* as long as it is not overriding the respondent's implicit or explicit decision to forego that defense.  *Henderson v. Thieret*, 859 F.2d 492, 498 (7th Cir. 1988).  For example, where the respondent has responded to one habeas claim on its merits while asserting that another is procedurally barred, it has implicitly waived any contention that the first claim is also procedurally defaulted.  *Perruquet v. Briley*,

390 F.3d 505, 516 (7th Cir. 2004) (citing *Henderson*, 859 F.2d at 497-98).  The respondent's silence on the subject of procedural default, however, "is normally not enough, standing alone, to demonstrate the intent to relinquish the defense that is the essence of true waiver."  *Perruquet*, 390 F.3d at 517.

The Respondent did not raise procedural default as a defense in response to any issue raised in Washington's habeas petition.  [*See* dkt. 10.]  Thus, it has not relinquished that defense on the two claims on which the Court ultimately concludes that Washington has procedurally defaulted.  *Perruquet*, 390 F.3d at 517.  For the following reasons, the Court concludes that it is appropriate in this case to raise procedural default *sua sponte* instead of addressing Washington's remaining claims on the merits.

First, it is clear that Washington has procedurally defaulted on the remaining claims on which he seeks habeas relief.  In all three state tribunals, Washington sought post-conviction relief on the basis of ineffective assistance of trial counsel, which the Court has addressed and rejected on its merits in the previous section.  [Dkts. 10-9 at 7-8, 11-12, 19-20; 10-12 at 5.]  At no time did Washington raise anything that could be construed as challenging the trial court's decision to deny his motion to suppress or its failure to give a jury instruction on manslaughter.  While Washington unsuccessfully presented those issues to the Indiana Supreme Court on direct appeal, *Washington*, 808 N.E.2d at 620, he did not pursue them when seeking post-conviction relief from the state courts.  Thus, he cannot raise them for the first time while seeking habeas relief in federal court.  *Malone v. Walls*, 538 at 753.

Second, because the Indiana post-conviction courts were never given the opportunity to pass on the merits of Washington's new claims on collateral review, comity and federalism principles weigh strongly against permitting him to assert those claims now in federal court.  *See*

*Perruquet*, 390 F.3d at 518 (holding that principles of comity and federalism weigh strongly against permitting petitioner to assert a claim in federal court on which he did not exhaust state court review); *see also Kurzawa v. Jordan*, 146 F.3d 435, 441 (7th Cir. 1998) ("Requiring that remedies be exhausted in state courts is merely comity's juridical tool, embodying the federal sovereign's respect for the state courts' capability to adjudicate federal rights.").

Third, if this Court reaches the merits of the claims Washington advances for the first time in federal court, it would have to review those claims *de novo* because there is no state-court decision on collateral review to evaluate. *Id.* "This would be inconsistent with the high level of deference to state-court decisions that Congress mandated when it passed [AEDPA]." *Id.* (citing *McFowler v. Jaimet,* 349 F.3d 436, 455 (7th Cir. 2003)).  As the Seventh Circuit noted in a similar situation, that would "result in a windfall" for Washington, "who would win plenary review of a claim that he never presented to the [state] courts, whereas habeas petitioners who properly present their claims to state courts first are entitled only to the extremely narrow review mandated by section 2254(d)." *Perruquet*, 390 F.3d at 518.

For these reasons, the Court concludes that Washington has procedurally defaulted on the issues he raises regarding the trial court's failure to suppress his confession or tender a jury instruction regarding voluntary manslaughter.  Accordingly, the Court will not address those issues on the merits.

## IV.
### CONCLUSION

The Court has carefully reviewed the state record in light of Washington's claims and has given such consideration to those claims as the limited scope of its review in a habeas corpus proceeding permits.  "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error

correction through appeal." *Harrington v. Richter*, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).  The deference due to state court decisions "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington*, 131 S. Ct. at 786; *see also Cavazos v. Smith*, 132 S. Ct. 2, 7-8 (2011) (per curiam) (citing Supreme Court jurisprudence "highlighting the necessity of deference to state courts in § 2254(d) habeas cases").  Washington's habeas petition does not present such a situation and that petition is therefore **DENIED**.  Judgment consistent with this Entry shall now issue.

Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2254 proceedings, and 28 U.S.C. § 2253(c), the Court finds that Washington has failed to show that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this Court] was correct in its procedural ruling[s]." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  The Court, therefore, denies a certificate of appealability.

08/29/2013

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

- 18 -

**Distribution via US Mail**:

JEFFREY WASHINGTON
862899
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
6908 S. Old US Hwy 41
P.O. Box 1111
CARLISLE, IN 47838

**Distribution via ECF only**:

Henry A. Flores, Jr.
INDIANA ATTORNEY GENERAL
henry.flores@atg.in.gov